Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **ROBERTO VARGAS VARGAS**<br><br>Parte recurrida<br><br>v.<br><br>**CAMIONEROS COOPERATIVA DE TRANSPORTE DE CARGA**<br><br>Parte recurrente | **TA2025RA00314** | **REVISIÓN ADMINISTRATIVA**<br>Procedente de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC)<br><br>Caso Núm:<br>**Q-2023-TD-0029**<br><br>Sobre: Revisión Separación de Socio |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de diciembre de 2025.

Comparece ante nos, Camioneros Cooperativa de Transporte de Carga, en adelante, Cooperativa o recurrente, y nos solicita que revisemos la "*Resolución*" emitida por la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico, en adelante, COSSEC, notificada el 23 de julio de 2025. En su dictamen, COSSEC declaró "*Ha Lugar*" la "*Solicitud de Revisión de Separación*" presentada por Roberto Vargas Vargas, en adelante Sr. Vargas o recurrido, y, en consecuencia, ordenó la restitución de este último como socio de la Cooperativa.

Por los fundamentos que expondremos a continuación, *revocamos* el dictamen recurrido.

**I.**

Este caso encuentra su génesis el 8 de julio de 2024, cuando la Junta de Directores de Camioneros, en adelante JD-Camioneros, emitió una citación dirigida al Sr. Vargas, con el fin de que este

compareciera ante dicha Junta para la celebración de una vista administrativa.[1] Conforme a la referida citación, la vista administrativa estaba inicialmente pautada para el 18 de julio de 2024, con el fin de dirimir varios asuntos por hechos acaecidos el 11 de mayo de 2024, en los cuales el recurrido presuntamente desplegó una conducta posiblemente conducente a su separación como socio de la Cooperativa.

En la misma citación, se le imputó al Sr. Vargas varias infracciones al Artículo 8.4 de la *Ley General de Sociedades Cooperativas de Puerto Rico de 2004*, Ley Núm. 239 de 1 de septiembre de 2004, según enmendada, 5 LPRA sec. 4381 *et seq.*, en adelante Ley de Cooperativas, y al Artículo IX, Sección VII, incisos (10) y (22) y Artículo IX, Sección XIII, incisos (1), (3), (6) y (7) del Reglamento de la Cooperativa. De igual manera, se le apercibió que se podría utilizar su expediente de socio para emitir la resolución sobre la conducta imputada.

Luego de varias prórrogas y solicitudes de transferencia, la vista administrativa se llevó a cabo los días 5 de septiembre de 2024, 8 de octubre de 2024 y el 5 de febrero de 2025.[2] Así las cosas, el 27 de marzo de 2025, el Oficial Examinador que presidió la vista administrativa sometió un informe enmendado para la consideración de la JD-Camioneros, mediante la cual recomendó la separación del recurrido.[3]

En consecución, el 4 de abril de 2025, la JD-Camioneros emitió la *"Resolución Núm. 2025-31"*, mediante la cual adoptó el informe del Oficial Examinador en su totalidad, y decidió separar al Sr. Vargas como socio de la Cooperativa.

---

[1] Apéndice del recurso, Entrada Núm. 1, Anejo 1.
[2] *Íd.*, Anejo 3, pág. 2.
[3] *Íd.*, Anejos 2 y 3. El Oficial Examinador sometió en la misma fecha un informe enmendado *nunc pro tunc*, con el fin de corregir errores nominales contenidos en el informe original.

En desacuerdo con dicha determinación, el Sr. Vargas presentó una "*Solicitud de Revisión de Separación*" ante COSSEC, fechada el 21 de abril de 2025.[4] En dicho escrito, el recurrido adujo que la Cooperativa emitió su determinación habiendo utilizado prueba inadmisible e inconsistente, en violación al debido proceso de ley. Arguyó, además, que la vista fue celebrada ante un Oficial Examinador, y no ante la JD-Camioneros, presuntamente en contra de lo dispuesto en el Reglamento de la Cooperativa.

Por su parte, el 16 de mayo de 2025, la Cooperativa presentó su correspondiente "*Alegato en Oposición a Solicitud de Revisión de Separación*".[5] En el mismo, negó toda imputación de capricho y arbitrariedad, y reafirmó que cumplieron con todas las garantías mínimas que el debido proceso de ley le confería al recurrido durante el transcurso del proceso administrativo. Sobre esto, alegó que la vista fue conducida por un Oficial Examinador imparcial, lo cual le fue notificado al recurrido mediante la citación a la vista administrativa.

Ante esto, COSSEC emitió una "*Orden*" notificada el 25 de junio de 2025, mediante la cual le concedió a la Cooperativa un término de cinco (5) días para evidenciar el haber enviado al Sr. Vargas mediante correo certificado la citación para la vista administrativa emitida el 8 de julio de 2024.[6]

Al día siguiente, la Cooperativa presentó una moción mediante la cual sometió la evidencia requerida, la cual demostró que la citación fue enviada mediante correo certificado el 9 de julio de 2024, y fue recibida por el recurrido el 11 de julio de 2024.[7] No obstante, el recurrente evidenció que también entregó *personalmente* al Sr. Vargas la referida citación y que,

---

[4] Apéndice del recurso, Entrada Núm. 1.
[5] *Íd.*, Entrada Núm. 3.
[6] *Íd.*, Entrada Núm. 4.
[7] *Íd.*, Entrada Núm. 5.

*adicionalmente, envió la misma al correo electrónico del representante legal del recurrido, ambas en la misma fecha que fue emitida, a saber, el 8 de julio de 2025.*

Así las cosas, la Oficial Examinadora nombrada por COSSEC sometió su "*Informe de la Oficial Examinadora*" el 17 de julio de 2025.[8] En dicho informe, la Oficial Examinadora recomendó que se declarara "*Ha Lugar*" la solicitud de revisión incoada por el Sr. Vargas, restituyéndolo como socio de la Cooperativa. Tal recomendación se fundamentó en la falta de notificación adecuada conforme al Artículo 9.5 de la Ley de Cooperativas. Además, señaló que al recurrido se le privó del derecho a examinar la prueba en su contra toda vez que la Cooperativa utilizó el expediente de socio del Sr. Vargas para fundamentar su decisión de separación, a pesar de no haberlo presentado durante la vista administrativa.

A estos efectos, COSSEC emitió una "*Resolución*" el 18 de julio de 2025, notificada el 23 de julio de 2025, mediante la cual acogió el informe de la Oficial Examinadora en su totalidad.[9]

En desacuerdo con la determinación de COSSEC, el 12 de agosto de 2025, la Cooperativa presentó una solicitud de revisión ante la Junta de Directores de COSSEC, en adelante, JD-COSSEC. Consecuentemente, el Sr. Vargas presentó su correspondiente oposición a la solicitud de revisión mediante escrito fechado el 22 de agosto de 2025.[10] Con el beneficio de ambos escritos, la JD-COSSEC emitió una "*Resolución*" el 28 de agosto de 2025, notificada el 29 de agosto de 2025, mediante la cual declaró "*No Ha Lugar*" a la revisión solicitada por el recurrente.[11]

Inconforme con dicho dictamen, el 18 de septiembre de 2025, el recurrente presentó una "*Solicitud de Reconsideración*".[12] No

---

[8] Apéndice del recurso, Entrada Núm. 6, págs. 7-15.
[9] *Íd.*, Entrada Núm. 6, págs. 1-6.
[10] *Íd.*, Entrada Núm. 8.
[11] *Íd.*, Entrada Núm. 9.
[12] *Íd.*, Entrada Núm. 10.

obstante, la JD-COSSEC nunca se expresó sobre esta última solicitud.

Aún inconforme con el proceder de COSSEC, y expirado el término reglamentario para que el foro revisor considerara la solicitud de reconsideración,[13] la Cooperativa compareció ante esta Curia mediante un "*Recurso de Revisión Judicial*" fechado el 28 de octubre de 2025, en el cual señaló los siguientes errores:

**PRIMER SEÑALAMIENTO DE ERROR**: ERRÓ COSSEC AL REVOCAR LA RESOLUCIÓN 2025-31 DE CAMIONEROS, A PESAR DE NO HABERSE DEMOSTRADO POR EL RECURRIDO, NI DETERMINADO POR COSSEC, QUE SE DIERAN LOS REQUISITOS JURISPRUDENCIALES PARA QUE UN FORO REVISOR PUEDA REVISAR DETERMINACIONES DE UN FORO ADJUDICADOR .

**SEGUNDO SEÑALAMIENTO DE ERROR**: ERRÓ COSSEC AL SEÑALAR – MOTU PROPRIO Y SIN JURISDICCIÓN PARA ELLO – DOS ALEGADOS ERRORES EN LA RESOLUCIÓN 2025-31 DE CAMIONEROS, A PESAR DE QUE DICHOS ALEGADOS ERRORES NO ESTABAN ANTE SU CONSIDERACIÓN PUES NO SE LEVANTARON POR EL RECURRIDO EN SU SOLICITUD DE REVISIÓN DE SEPARACIÓN.

**TERCER SEÑALAMIENTO DE ERROR**: ERRÓ COSSEC AL REVOCAR LA RESOLUCIÓN 2025-31 DE CAMIONEROS FUNDAMENTÁNDOSE EN DOS ERRORES/CARGOS QUE NO FUERON DEBIDAMENTE NOTIFICADOS A CAMIONEROS Y, POR ENDE, SOBRE LOS QUE NO SE LE DIO OPORTUNIDAD DE DEFENDERSE, EN VIOLACIÓN AL DEBIDO PROCESO DE LEY .

**CUARTO SEÑALAMIENTO DE ERROR**: ERRÓ COSSEC AL DETERMINAR QUE CAMIONEROS INCURRIÓ EN LOS ERRORES SEÑALADOS MOTU PROPRIO POR DICHA ENTIDAD, A PESAR DE QUE LA JURISPRUDENCIA APLICABLE HA AVALADO LOS ACTOS DE CAMIONEROS QUE FUERON CONSIDERADOS COMO ERRORES POR COSSEC.

---

[13] Apéndice del recurso, Entrada Núm. 9, págs. 4-5.

Mediante "*Resolución*" del 29 de octubre de 2025, concedimos a la parte recurrida hasta el 28 de noviembre para presentar su posición en torno al recurso, conforme a lo dispuesto en la Regla 63 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 83-84, 215 DPR ___ (2025).

El 28 de noviembre de 2025, el recurrido nos solicitó una prórroga de dos (2) días laborables para presentar su escrito. Finalmente, luego de que concediéramos la prórroga solicitada, el Sr. Vargas compareció mediante su "*Alegato en Oposición*", fechado el 3 de diciembre de 2025.

Con la comparecencia de ambas partes, procedemos a expresarnos.

## II.

### A. Revisión Judicial de Decisiones Administrativas

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Vázquez, et als. vs. DACo*, 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalaqcua v. Quirós, Betances*, 214 DPR 370, 377 (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008). De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". *Íd.*

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Voilí*

*Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753. *Véase,* además, *Simpson, Passalaqcua v. Quirós, Betances,* supra; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas, por gozar estas de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *Katiria's Café, Inc vs. Mun. de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Transp. Sonell, v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *Mun. de San Juan v. CRIM,* 178 DPR 163, 175 (2010).

Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754; *Otero v. Toyota,* 163 DPR 716, 729 (2005).

Por ello, los tribunales no deben intervenir o alterar las determinaciones de hechos que emita una agencia, siempre que estén sostenidas por *evidencia sustancial* que surja de la *totalidad*

*del expediente administrativo. Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 127 (2019). En este contexto, nuestro Tribunal Supremo ha definido el referido concepto como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Rolón Martínez v. Supte. Policía,* supra, pág. 36.

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. *Transp. Sonell v. Jta. Subastas ACT,* supra; *Otero Rivera v. USAA Fed. Savs. Bank,* supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro,* supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde,* supra, pág. 126; *Rolón Martínez v. Supte. Policía,* supra, pág. 35; *González Segarra v. CFSE,* 188 DPR 252, 276 (2013); *Mun. de San Juan v. CRIM,* supra, pág. 175.

Sin embargo, nuestro más Alto Foro recientemente dispuso, acogiendo así la normativa que impera en el Foro Federal, que la deferencia administrativa debida *no se extiende a las determinaciones de derecho. Vázquez, et als. vs. DACo,* 2025 TSPR 56, supra. A tenor con esto, la LPAUG, supra, sec. 9675 dispone que "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Torres Rivera v. Policía de PR,* 196 DPR 606, 627 (2016). A esos efectos, nuestro Tribunal Supremo aclaró que, a través de la precitada disposición, el legislador eliminó la deferencia judicial sobre las determinaciones de derecho que realicen las agencias administrativas. *Vázquez, et als. vs. DACo,* supra.

Por lo tanto, cuando surge una controversia sobre las leyes y reglamentos que una agencia administra, la deferencia cede cuando esta última "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; o (3) lesionó derechos constitucionales fundamentales". *OEG v. Martínez Giraud,* supra, pág. 90; *Torres Rivera v. Policía de Puerto Rico,* supra, pág. 628. Así, el foro apelativo debe hacer distinción entre los asuntos consistentes a la discreción o pericia de la agencia, y las controversias relacionadas a la interpretación estatutaria, en las cuales los tribunales son especialistas. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 116; *OCS v. Point Guard Ins.,* 205 DPR 1005, 1028 (2020).

Así, los tribunales, para lograr su encomienda, deberán evaluar los siguientes tres (3) aspectos: 1) si el remedio concedido fue el apropiado; 2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y 3) *si se sostienen las conclusiones de derecho realizadas por la agencia. Katiria's Café Inc. v. Mun. de San Juan,* supra; *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 115; *OEG* v. *Martínez Giraud,* supra, pág. 89; *Moreno Lorenzo y otros v. Depto. Fam.,* 207 DPR 833, 839-840 (2021); *Capó Cruz v. Jta. Planificación et al.,* supra, pág. 591.

### B. Proceso de Separación de Socios bajo la Ley General de Sociedades Cooperativas de Puerto Rico

En Puerto Rico, las cooperativas, *así como las personas que participan en ellas,* se encuentran extensamente reguladas por la Ley de Cooperativas. *Cooperativa v. Colón Lebrón,* 203 DPR 812, 822 (2020). Dicho estatuto fue adoptado con el objetivo de proveerle un marco jurídico a las cooperativas y al sector cooperativo para su organización, funcionamiento y regulación. Ley de Cooperativas, supra, sec. 4381; *Cooperativa v. Colón Lebrón,* supra, pág 821.

Según la precitada Ley, las cooperativas se cimentan en la "solidaridad y esfuerzo propio para realizar actividades económico-sociales, con el propósito de satisfacer necesidades individuales y colectivas, sin ánimo de lucro". Ley de Cooperativas, supra, sec. 4387. Así, estas entidades trabajan con el fin de alcanzar un desarrollo sostenible de sus comunidades mediante aquellas políticas que sus socios aprueben. Ley de Cooperativas, supra, sec. 4388(g).

Cónsono con tales propósitos, todo socio debidamente admitido a una cooperativa tiene el deber de cumplir con todas las obligaciones que le impone la Ley de Cooperativas, así como aquellas contenidas en las cláusulas y reglamento de la cooperativa a la que pertenece, y, además, con: "a) cualquier contrato, obligación social o pecuniaria con la cooperativa; b) los acuerdos de la Asamblea y de su Junta; c) desempeñar los cargos para los que fuera elegido; y d) velar por los intereses de su cooperativa". Ley de Cooperativas, supra, sec. 4439.

Ahora bien, como parte de las facultades conferidas a las cooperativas organizadas de conformidad con la precitada Ley, estas pueden ordenar la separación o expulsión de uno de sus socios bajo ciertas circunstancias. Así, el Artículo 9.4 de la Ley de Cooperativas dispone que la Junta de Directores de una cooperativa tendrá la facultad para separar o expulsar a uno de sus socios si considera que este ha incurrido en una o más de las siguientes causas:

a. ha actuado en contra de los intereses de la cooperativa o de sus fines y propósitos;

b. ha incurrido en mora en el cumplimiento de sus obligaciones con la cooperativa, habiéndole previamente notificado de su incumplimiento;

c. ha realizado actos impropios que perjudiquen moral o materialmente a la cooperativa;

d. ha infringido las disposiciones de esta Ley;

e. ha incurrido en cualquier falta considerada por el reglamento como causa de separación;

f. ha expedido o cobrado a través de la cooperativa cheques fraudulentos o sin fondos suficientes para su pago, y en violación a las disposiciones del Código Penal de Puerto Rico; o

g. ha dejado voluntariamente de realizar los trabajos asignados como socio de una cooperativa de trabajadores.

Ley de Cooperativas, supra, sec. 4445.

Una vez que la Junta de Directores de una cooperativa estime que procede la acción de separación, deberá cumplir con el procedimiento dispuesto en la Ley de Cooperativas, comenzando con la emisión de una citación para celebrar una vista administrativa que cumpla con los siguientes requisitos:

Cuando la Junta determine que procede una acción para separar un socio, deberá notificar por correo certificado al socio afectado, especificando las causas para ello. La notificación lo citará a comparecer ante la Junta, *que celebrará una vista administrativa dentro de un término no menor de diez (10) días ni mayor de treinta (30) días desde el recibo de la notificación.*

Art. 9.5 de la Ley de Cooperativas, supra, sec. 4446. (Énfasis nuestro).

Adicionalmente, deberán garantizarse los siguientes derechos al socio objeto del procedimiento administrativo:

El socio afectado podrá asistir a la vista acompañado de abogado, y tendrá derecho a examinar la prueba presentada en su contra, a contrainterrogar testigos y a ofrecer prueba en su favor. La Junta evaluará la prueba presentada y emitirá su decisión dentro del plazo de quince (15) días a partir de la vista administrativa y notificará a la parte afectada por correo certificado dentro de cinco (5) días siguientes a la fecha que se emita la decisión. Toda decisión de la Junta separando a un socio de una cooperativa será efectiva desde la fecha de notificación al socio afectado. [….]

*Íd.*

A renglón seguido, la Ley de Cooperativas provee para que el socio afectado pueda "radicar una petición de revisión ante la Oficina del Inspector de Cooperativas, dentro de los diez (10) días siguientes a la fecha en que se le notifique su separación", si

entiende que fue la cooperativa la que tomó tal determinación de manera injusta. Ley de Cooperativas, supra, sec. 4447.

### C. Facultad Adjudicativa de COSSEC

La LPAUG define a las agencias como:

[C]ualquier junta, cuerpo, tribunal examinador, *corporación pública*, comisión, oficina independiente, división, administración, negociado, departamento, autoridad, funcionario, persona, entidad o cualquier instrumentalidad del Gobierno de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo funciones de reglamentar, investigar, o que pueda emitir una decisión, o con facultades para expedir licencias, certificados, permisos, concesiones, acreditaciones, privilegios, franquicias, acusar o adjudicar...

[....]

LPAUG, supra, sec. 9603(a).

Pertinente al recurso ante nuestra consideración, COSSEC es una entidad pública creada por virtud de la Ley Núm. 114 de 17 de agosto de 2001, conocida como la *Ley de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico*, 7 LPRA sec. 1334 *et seq.*, en adelante Ley Núm. 114, con el fin de, entre otras cosas, efectuar una supervisión y fiscalización justa, equitativa y efectiva del movimiento cooperativo de Puerto Rico. Ley Núm. 114, supra, sec. 1334. *Véase*, además, *Legal Coop. v. COSSEC*, 213 DPR 777, 799, 802 (2024). Por virtud de esta Ley se le confirió a COSSEC las siguientes responsabilidades primordiales:

(1) Fiscalizar y supervisar de forma comprensiva y consolidada a las cooperativas de ahorro y crédito que operen o hagan negocios en el Estado Libre Asociado de Puerto Rico, velando de manera exclusiva por el fiel cumplimiento por parte de dichas cooperativas de ahorro y crédito de todas aquellas leyes presentes y futuras relativas a sus operaciones, negocios, productos y/o servicios.

[....]

(4) Velar por los derechos y prerrogativas de los socios de toda cooperativa, protegiendo sus intereses económicos, su derecho a estar bien informado y previniendo contra prácticas engañosas y fraudulentas en la oferta, venta,

compra y toda otra transacción en o relativa a las acciones de cooperativas.

Ley Núm. 114, supra, sec. 1334b(a)-(b).

Para adelantar su política pública, la Ley Núm. 114 le transfirió a COSSEC todas las funciones, poderes y deberes de todas las agencias o entes gubernamentales relacionados con la supervisión, fiscalización e implantación de varias disposiciones de ley, *incluyendo aquellas conferidas a la Oficina del Inspector de Cooperativas por virtud de la Ley de Cooperativas.* Ley Núm. 114, supra, sec. 1334b(c)(1).

De esta manera, COSSEC quedó facultada para ejercer sus poderes para atender, investigar y resolver aquellas querellas que ante ella se presenten, e incluso, interponer cualquier remedio, acción o procedimiento legal que entienda necesario o conveniente para hacer efectivos los propósitos de su ley habilitadora o cualquier otra ley o reglamento que le haya sido asignada para su cumplimiento o fiscalización. Ley Núm. 114, supra, sec. 1334b(d)(12)-(13).

Además, tales poderes habilitan a COSSEC para ser el organismo fiscalizador de todas las entidades cooperativas debidamente constituidas y autorizadas para operar de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico. Ley Núm. 114, supra, sec. 1334b(d)(10); *Legal Coop. v. COSSEC*, supra, pág. 802.

Para esto, la Junta de Directores de COSSEC puede aprobar las reglas y reglamentos para la aplicación de la Ley Núm. 114 para regir los asuntos de COSSEC, siempre que cumplan con las disposiciones de la LPAUG. Ley Núm. 114, supra, 1334e(a)(i).

A estos fines, COSSEC promulgó el *Reglamento de Procedimientos Investigativos y Adjudicativos,* Núm. 9941, de 14 de marzo de 2023, con el propósito de reglamentar los procedimientos adjudicativos que se conducen ante ella como parte de su función

de supervisión y fiscalización de las cooperativas bajo su jurisdicción. Artículos 1.3 y 1.4 del Reglamento Núm. 9941.

En su Capítulo IV, el Reglamento 9941 regula todo lo concerniente al procedimiento adjudicativo formal ante COSSEC, incluso aquellas instancias en las cuales dicha corporación deba adjudicar una orden, solicitud, querella o petición conforme a dicho procedimiento. Dicho Reglamento dispone que este proceso puede iniciarse por una persona ajena a COSSEC mediante la presentación de una querella, solicitud o petición escrita, ya sea personalmente, por correo ordinario o por medios electrónicos, con el propósito de reclamar un derecho y solicitar un remedio al amparo de las leyes administradas por COSSEC. Arts. 4.2 y 4.4 del Reglamento 9941.

Una vez presentada una querella, solicitud o petición ante COSSEC, *dicha corporación deberá realizar una evaluación preliminar del escrito presentado para constatar su jurisdicción sobre la materia o sobre las personas del asunto presentado.* Tal evaluación podría facultar a COSSEC para desestimar y archivar sumariamente un asunto, ya se haya solicitado por una parte *o a iniciativa propia.* Art. 4.17 del Reglamento 9941. De igual manera, el referido Reglamento permite a que el Presidente Ejecutivo de COSSEC pueda otorgar el remedio que proceda en derecho, aun cuando la parte que presentó su querella, solicitud o petición no lo haya solicitado. Art. 4.49 del Reglamento 9941.

### D. Debido Proceso de Ley Administrativo

Tanto en la Constitución del Estado Libre Asociado de Puerto Rico como en la Constitución Federal se consagra el derecho fundamental al debido proceso de ley. Véase, Const. P.R. Art. II, Sec. 7; Const. EE. UU., Emdas. V y XIV, Tomo I; *PVH Motor v. ASG*, 209 DPR 122, 130 (2022); *González Segarra et al. v. C.F.S.E.*, 188 DPR 252, 278 (2013). El debido proceso de ley cuenta con dos vertientes: la procesal y la sustantiva. *Katiria's Café, Inc. v. Mun. de San Juan,*

2025 TSPR 33, supra; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Domínguez Castro et al. v. ELA I,* 178 DPR 1, 35 (2010); *Rivera Rodríguez & Co. v. Lee Stowell,* 133 DPR 881, 887 (1993).

El debido proceso de ley, en su dimensión procesal, se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *PVH Motor v. ASG,* supra, págs. 130-131; *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012). Cónsono con ello, se han reconocido las siguientes garantías procesales, las cuales conforman el debido proceso de ley en su vertiente procesal: (1) la concesión de una vista previa; (2) una notificación oportuna y adecuada; (3) el derecho a ser oído; (4) el derecho a confrontarse con los testigos en su contra; (5) a presentar prueba oral y escrita a su favor; y (6) la presencia de un adjudicador imparcial. *Katiria's Café, Inc. v. Mun. de San Juan,* supra; *PVH Motor v. ASG,* supra, pág. 131; *Vázquez González v. Mun. de San Juan,* 178 DPR 636, 643 (2010); *Garriga Villanova v. Mun. de San Juan,* 176 DPR 182, 197 (2009). Estas garantías procesales del debido proceso de ley se han extendido a los procesos administrativos. *PVH Motor v. ASG,* supra, pág. 131.

Conforme a lo antes expuesto, la LPAUG, supra, incorpora en sus disposiciones los criterios necesarios para asegurar la legalidad de los procesos adjudicativos administrativos. En particular, la Sección 3.1 del aludido estatuto, así como la jurisprudencia interpretativa pertinente, reconocen a todas las partes en un procedimiento adjudicativo las siguientes garantías mínimas del debido proceso de ley en su vertiente procesal: a) notificación adecuada de los cargos o querellas o reclamos contra las partes; b) derecho a presentar evidencia; c) derecho a una adjudicación imparcial y; (d) derecho a que la decisión sea basada en el expediente. LPAUG, supra, sec. 9641; *Román Ortiz v. OGPe,* 203 DPR

947, 954 (2020); *Fuentes Bonilla v. ELA et al.*, supra, pág. 395; *Álamo Romero v. Adm. de Corrección,* 175 DPR 314, 329 (2009); *Almonte et al. v. Brito*, supra; *Rivera Rodríguez & Co. v. Lee Stowell*, supra, pág. 889.

Por lo tanto, el privar de la libertad o propiedad a una persona sin proveer la oportunidad de ser oído es contrario al debido proceso. *Rivera Rodríguez & Co. v. Lee Stowell,* supra.

### E. Jurisdicción

Es norma conocida que la jurisdicción es el poder o la autoridad que posee un tribunal o un foro administrativo para considerar y decidir casos o controversias con efecto vinculante para las partes. *Muñoz Barrientos v. ELA et al.*, 212 DPR 714, 726 (2023). *Véase*, además, *Markovic v. Meldon et al.*, 2025 TSPR 99, 216 DPR ___ (2025); *Mun. Rio Grande v. Adq. Finca et al.*, 2025 TSPR 36, 215 DPR ___ (2025); *Freire Ruiz et al. v. Morales, Hernández,* supra; *Mun. Aguada v. W. Const. y Recovery Finance*, 214 DPR 432, 448 (2024); *Matos, Sostre v. Registradora*, 213 DPR 348, 354 (2023); *MCS Advantage v. Fosass Blanco et al*, 211 DPR 135, 144 (2023); *FCPR v. ELA et al*, 211 DPR 521, 529 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384, 394 (2022).

Así pues, al presentarse en un foro adjudicativo una situación jurídica, se torna forzoso el examinar, como primer factor, si existe jurisdicción sobre la controversia y sobre las partes litigantes. *Mun. Aguada v. W. Const. y Recovery Finance*, supra; *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019). Ello, dado que este aspecto incide sobre su poder para adjudicar una controversia. *Mun. Aguada v. W. Const. y Recovery Finance*, supra, págs. 448-449.

Ante tal normativa, se ha reiterado que los tribunales debemos ser celosos guardianes de nuestra jurisdicción. *Markovic v. Meldon et al.*, supra; *Greene et als. v. Biase et al.*, 2025 TSPR 83, 216 DPR ___ (2025); *Mun. Aguada v. W. Const. y Recovery Finance,*

supra, pág. 448. Conforme a esto, la jurisdicción de un foro adjudicativo puede ser cuestionada por cualquiera de las partes o *por el propio foro a iniciativa propia*, incluso cuando las partes no lo plantean. *Mun. Aguada v. W. Const. y Recovery Finance*, supra, pág. 449. En virtud de lo anterior, las cuestiones relativas al elemento jurisdiccional son privilegiadas, lo cual, les brinda prioridad frente a otros asuntos envueltos en el análisis jurídico. *Torres Alvarado v. Madera Atiles,* supra*,* pág. 500; *Morán v. Martí*, 165 DPR 356, 364 (2005). Siendo así, al foro judicial carecer de jurisdicción, resulta innecesario entrar en los méritos del caso. *MCS Advantage, Inc. v. Fossas Blanco y otros*, supra, pág. 146.

Por lo tanto, los foros administrativos, al igual que los tribunales, no tienen discreción para asumir jurisdicción donde no la hay. *Muñoz Barrientos v. ELA et al.*, supra.

### III.

La Cooperativa comparece ante esta Curia, impugnando la "*Resolución*" notificada por la Presidenta Ejecutiva de COSSEC el 23 de julio de 2025, mediante la cual revocó la "*Resolución 2025-31*" sobre separación de socio, según emitida por la JD-Camioneros, de manera que ordenó la reinstalación del Sr. Vargas como socio de la Cooperativa.

Primordialmente, la recurrente aduce que COSSEC se equivocó al determinar que hubo un incumplimiento con dos (2) requisitos del debido proceso de ley que no fueron reclamados por el Sr. Vargas en su solicitud de revisión, a saber: la presunta notificación inadecuada de la citación a la vista administrativa, y la presunta utilización indebida del expediente administrativo del recurrido para emitir su determinación. Sostiene que el Foro Recurrido no tenía jurisdicción para señalar *motu proprio* tales incumplimientos, y que debía limitarse a revisar los únicos errores señalados por el recurrido en su solicitud de revisión.

Arguye, además, que la determinación sobre separación de socio emitida por la JD-Camioneros no contenía los elementos para ser revisada por COSSEC, pues la misma no se emitió de manera arbitraria ni caprichosa, por lo que la misma merecía deferencia por parte del Foro Recurrido. *No le asiste la razón.*

Conforme al derecho previamente esbozado, los foros administrativos, al igual que los tribunales, tienen la obligación de auscultar, en primer orden, si ostentan jurisdicción sobre la controversia ante su consideración y sobre las partes litigantes. Esto pues, la falta de jurisdicción incide sobre su facultad adjudicativa. Por tal razón, nuestro ordenamiento permite que un foro adjudicativo pueda, *por iniciativa propia*, cuestionar tal aspecto, incluso cuando ninguna de las partes lo haya planteado.

En el presente caso, no existe controversia en cuanto a las facultades adjudicativas de COSSEC para revisar *toda* determinación emitida por una cooperativa que decida separar a uno de sus socios, en virtud del poder de supervisión y fiscalización sobre las cooperativas en Puerto Rico que le fue conferido por ley. Es decir, dicho Foro Recurrido es quien tiene jurisdicción en primera instancia para atender la petición de revisión que radicó el Sr. Vargas luego de que le fue notificada su separación, tal cual prescribe el Artículo 9.6 de la Ley de Cooperativas, supra, sec. 4447. Por lo tanto, huelga decir que COSSEC estaba completamente facultada para cuestionar y atender prioritariamente, *por iniciativa propia*, cualquier asunto que estimara pertinente para constatar su jurisdicción.

Ante esto, no encontramos que el Foro Recurrido haya errado en cuanto a su cuestionamiento sobre el modo en que fue notificada la citación a la vista administrativa, así como la utilización de la prueba en esta, previo a atender los errores señalados por el Sr. Vargas en su solicitud de revisión. Esto pues, el incumplimiento con

las garantías constitucionales del debido proceso de ley incidiría sobre su jurisdicción para revisar la determinación de la cooperativa recurrente. Véase, *St. James Sec. v. AEE*, 213 DPR 366, 380 (2023); *Reyes v. Oriental Fed. Savs. Bank*, 133 DPR 15, 27 (1993).

En ese sentido, no podemos sino concluir que los *primeros dos (2) errores señalados* por la Cooperativa *no fueron cometidos*, puesto que COSSEC podía, y tenía, que auscultar su jurisdicción antes de revisar la "*Resolución 2025-31*" que emitió la JD-Camioneros, la cual era completamente revisable conforme a lo dispuesto en la Ley de Cooperativas.

Ahora bien, en la alternativa, la Cooperativa alega que COSSEC erró al revocar la "*Resolución 2025-31*" luego de determinar que esta incumplió con los requisitos del debido proceso de ley antes mencionados durante el proceso administrativo para separar al Sr. Vargas. Sostiene que no incurrió en dichos incumplimientos, puesto que la citación fue notificada el mismo día en que fue emitida, además, *mediante entrega personal al recurrido y a través del correo electrónico de su representante legal*. Aduce que estos métodos satisfacen el requisito de notificar al socio recurrido en un término de diez (10) días antes de la fecha inicialmente pautada para la vista administrativa.

Añade que, no empece a que la citación fue enviada por correo certificado un (1) día después de su emisión, la vista fue realmente celebrada en exceso del término dispuesto en la Ley de Cooperativas, debido a que ambas partes solicitaron múltiples prórrogas y transferencia de vista. Por otro lado, afirma que la JD-Camioneros estaba facultada para utilizar el expediente del Sr. Vargas, pues este estuvo apercibido de su posible uso según le fue notificado en la citación.

Surge del expediente que COSSEC revocó la "*Resolución 2025-31*" luego de acoger el informe de la Oficial Examinadora por ella

nominada, quien interpretó que la Cooperativa notificó inadecuadamente al Sr. Vargas de la acción de separación, pues incumplió con el término de notificación dispuesto en el Artículo 9.5 de la Ley de Cooperativas, supra.

Cual citado, es norma reiterada que los tribunales apelativos han de concederle gran deferencia a las decisiones de los organismos administrativos, pues estas gozan de una presunción de regularidad y corrección por razón de la experiencia y conocimiento especializado que se les ha atribuido a tales entidades. Sin embargo, dicha deferencia cede respecto a las determinaciones de derecho, las cuales pueden ser revisadas en todos sus aspectos. Así, la deferencia administrativa no es extensible cuando la agencia recurrida, entre otras circunstancias, se equivoca al aplicar alguna de las leyes que administra.

Debemos resaltar que la controversia que nos ocupa es una estrictamente de derecho, y sobre asuntos de interpretación con relación al requisito de notificación dispuesto en el Artículo 9.5 de la Ley de Cooperativas, supra. Como reseñamos previamente, cuando una cooperativa entiende que procede una acción administrativa para separar a uno de sus socios, su Junta de Directores debe emitir una citación que cumpla con ciertos requisitos de notificación para cumplir con las garantías del debido proceso de ley.

En virtud del referido estatuto, la acción de separación debe notificarse al socio afectado mediante correo certificado, la cual debe incluir una citación para comparecer ante la Junta de Directores y, además, especificar las razones que motivan tal acción. Consecuentemente, una vez enviada dicha citación, el estatuto en cuestión sugiere que la Junta de Directores de la cooperativa promovente *tiene un deber de celebrar una vista administrativa*

*dentro de un término preestablecido, que comienza a transcurrir desde que el socio afectado recibe la notificación.*

No obstante, no apreciamos que el referido término tenga el propósito de compeler el envío de la citación dentro del mismo. Específicamente, al examinar el estatuto correspondiente, vemos que el mismo dispone que "[l]a notificación lo citará a comparecer ante *la Junta, que celebrará una vista administrativa dentro de un término no menor de diez (10) días ni mayor de treinta (30) días desde el recibo de notificación*". Ley de Cooperativas, *supra*, sec. 4446.

De hecho, podemos apreciar que la segunda parte de la precitada oración va expresamente dirigida a imponer una obligación a la Junta para celebrar la vista administrativa que cumpla con el término aludido *luego* de que el socio afectado reciba una notificación que contenga los requisitos previamente esbozados en el mismo artículo.

De esta manera, una lectura detenida al Artículo 9.5 de la Ley de Cooperativas nos revela que la citación que se emita tiene que cumplir con los siguientes requisitos relacionados a la notificación adecuada: 1) que se efectué por correo certificado; 2) que especifique las causas para proceder con la acción de separación, y; 3) que lo cite para comparecer ante la Junta de Directores para celebrar una vista administrativa a tales efectos.

Tales requisitos se encuentran contenidos en la "*Citación a Vista Administrativa*" emitida por la JD-Camioneros, pues esta contiene las presuntas infracciones a la Ley de Cooperativas y al Reglamento de la Cooperativa junto a la conducta imputada al recurrido, y citó al Sr. Vargas a comparecer ante la JD-Camioneros para celebrar una vista administrativa en su salón de reuniones, originalmente pautada para el 18 de junio de 2024.[14] De igual

---

[14] Apéndice del recurso, Entrada Núm. 1, Anejo 1.

manera, esta fue enviada al recurrido mediante correo certificado con acuse de recibo.[15]

Empero, no hallamos base para interpretar que el término que establece el Artículo 9.5 de la Ley de Cooperativas, supra, este atado al requisito de notificación adecuada. Más bien, el término se encuentra dirigido a prohibirle a la Junta de Directores la celebración de una vista administrativa antes de los diez (10) días posteriores al recibo de la notificación, lo cual como veremos, *no ocurrió en el presente caso.*

Dicho esto, justipreciamos que la polémica interpretativa del caso de marras, con relación a si la recurrente demostró haber enviado la citación oportuna y adecuadamente, se centra en la fecha originalmente pautada *vis a vis* a la fecha real en que la vista administrativa fue, en efecto, celebrada.

De los documentos que obran en autos surge que la vista administrativa fue celebrada los días 5 de septiembre de 2024, 8 de octubre de 2024 y el 5 de febrero de 2025.[16] Tales fechas surgen luego de que las partes, en mutuo acuerdo, postergaran la fecha inicialmente pautada por medio de prórrogas y transferencias de vistas.[17] Por lo tanto, a pesar de que dicho término no está atado al requisito de notificación, *la vista fue celebrada en exceso de los diez (10) días mínimos que dispone la Ley de Cooperativas*, de manera que no se le vulneró al recurrido el debido proceso de ley bajo este fundamento.

Aún si acogiéramos la interpretación realizada por COSSEC, nos persuaden los argumentos de la Cooperativa en cuanto a que el Sr. Vargas quedó debidamente notificado y citado conforme a los requisitos y términos que dispone el Artículo en cuestión.

---

[15] Apéndice del recurso, Entrada Núm. 5, Anejo 3.
[16] *Íd.*, Entrada Núm. 6, pág. 10.
[17] *Íd.*, Entrada Núm. 7, Anejos 3, 6 y 7.

A pesar de que la fecha inicialmente pautada para la vista administrativa era el 18 de junio de 2024, y que el acuse de recibo refleja que el Sr. Vargas recibió la notificación por correo certificado el 11 de junio de 2024, lo cierto es que la Cooperativa le notificó al propio recurrido mediante entrega personal de la citación, el mismo día que fue emitida, a saber, el 8 de junio de 2024.[18] En la misma fecha, le fue notificada también la referida citación a través del correo electrónico de su representante legal, quien, como cuestión de hecho, contestó la misma solicitando la transferencia de la vista administrativa originalmente pautada.[19]

Como cuestión de derecho, la propia LPAUG prefiere y permite que, en procesos adjudicativos –como la acción de separación de socios en el presente caso– *las notificaciones sean realizadas mediante correo electrónico, e incluso que se entreguen personalmente.* LPAUG, supra, secs. 9642, 9649. Por lo tanto, ambos métodos nos resultan compatibles con el propósito de la notificación adecuada que garantiza el debido proceso de ley en este tipo de procesos, pues estos informan efectivamente las alegaciones en su contra y le conceden la oportunidad para ser escuchado en la vista a celebrarse. *Vendrell López v. AEE*, 199 DPR 352, 360 (2017), citando a D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013, pág. 185.

Además, resulta cierto que el diligenciamiento personal de una citación es el método más efectivo para notificar a una parte sobre la acción que pesa en su contra, por lo que dicho método de notificación es compatible y permitido, aun cuando una disposición legal no lo contemple específicamente. Véase, *Cooperativa v.*

---

[18] Apéndice del recurso, Entrada Núm. 5, Anejo 1.
[19] *Íd.*, Entrada Núm. 5, Anejo 2.

*Hernández Hernández,* 205 DPR 624, 632 (2020); *Asoc. Res. Colinas Metro v. S.L.G.,* 156 DPR 88, 102 (2002).

Ante este supuesto, igualmente concluiríamos que al Sr. Vargas no se le violentó el debido proceso de ley pues, al ser notificado el mismo día en que se emitió la citación mediante su entrega personal, así como al correo electrónico de su representante legal, este quedó debidamente notificado de la acción que tenía en su contra con un mínimo de diez (10) días previo a la fecha originalmente pautada.

En cuanto al segundo fundamento utilizado por COSSEC para revocar la determinación de la JD-Camioneros, tampoco hallamos base para interpretar que al Sr. Vargas se le haya privado del derecho a examinar la prueba utilizada para emitir su determinación. La citación emitida por JD-Camioneros claramente le apercibió sobre la posible utilización del expediente de socio del recurrido,[20] el cual estuvo desde tal notificación, a prerrogativa del recurrido, a ser examinado para ofrecer la prueba que estimara a su favor. Además, según hemos citado, es principio básico de los procesos adjudicativos el que las determinaciones de una agencia estén sostenidas por evidencia sustancial que surja de la *totalidad del expediente administrativo.* Véase, además, LPAUG, supra, sec. 9641(a)(D).

A base de lo aquí discutido, *concluimos* que COSSEC interpretó y aplicó erróneamente las disposiciones de la Ley de Cooperativas para revocar la *"Resolución 2025-31"* según emitida por la JD-Camioneros. Por lo tanto, aunque por otros fundamentos, el Foro Recurrido erró al emitir su dictamen, por lo que este Tribunal no tiene más remedio *que revocar las determinaciones del Foro Recurrido.* En la medida que la Cooperativa no incumplió con el

---

[20] Apéndice del recurso, Entrada Núm. 1, Anejo 1, pág. 3.

debido proceso de ley, según señalado por COSSEC, resulta innecesario que atendamos el *tercer* señalamiento de error.

**IV.**

Por los fundamentos antes expuestos, *revocamos* la "*Resolución*" notificada por COSSEC el 23 de julio de 2025.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones